**Reversed and Remanded and Majority and Dissenting Opinions filed July 26, 2022.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-20-00562-CV

---

## CORTNEY HILL INDIVIDUALLY AND AS NEXT FRIEND OF D.M., Appellant

### V.

## ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY, Appellee

---

**On Appeal from the 215th District Court
Harris County, Texas
Trial Court Cause No. 2018-48768**

---

### OPINION

Appellant Cortney Hill ("Cortney"), individually and as next friend of her son D.M., filed suit against appellee Allstate Fire and Casualty Insurance Company ("Allstate") for its failure to pay claims under an automobile insurance policy. Allstate filed a traditional and no evidence motion for summary judgment, which the trial court granted. In a single issue on appeal, Cortney argues that the trial court erred in granting summary judgment because she raised a genuine issue of

material fact regarding whether she and D.M. were covered individuals under the policy. We reverse and remand.

## I. BACKGROUND

*The Allstate Policy*

In May 2016, Catherine Hill ("Catherine")—Cortney's mother—renewed her auto insurance policy with Allstate. Regarding uninsured/underinsured motorists coverage, the policy protects "covered person[s]" while occupying the covered auto:

A. We will pay damages which a **covered person** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** because of bodily injury sustained by **a covered person**, or **property damage**, caused by an accident.

B. "**Covered person**" as used in this Part means:

1. You or any **family member**;
2. Any other person **occupying our covered auto**;
. . . .

With regard to personal injury protection, the following provisions apply:

A. We will pay Personal Injury Protection benefits because of bodily injury:

1. resulting from a motor vehicle accident; and
2. sustained by a **covered person**.

Our payment will only be for losses or expenses incurred within three years from the date of the accident.

. . .

C. "**Covered person**" as used in this Part means:

. . .

2

2. Any other person while **occupying your covered auto** with your permission.

"Occupying" is defined in the policy as "in, upon, getting in, on, out, or off."

*Background Facts*

On October 15, 2016, Cortney borrowed her mother Catherine's car to run errands. After receiving Catherine's approval, Cortney drove out, taking D.M. and J.B.—her fifteen-year old "future stepdaughter"—with her. On the way home, the car ran out of gas on U.S. Highway 59. Cortney pulled the car over on the right shoulder, and then called her future mother-in-law—Evelyn Brown ("Evelyn")—for help.

Evelyn filled a gas can and parked behind Cortney on the shoulder. Evelyn stood between the two vehicles to hand the gas can to Cortney. Because the gas tank access was toward the back of the driver's side on the side of oncoming traffic, Cortney was afraid she would get hit by a car while she was filling the gas tank, and "pressed [her] body on the car so [she] would be as close as possible to avoid the passing cars." Cortney further claimed her "body was touching the car while [she] was holding the gas can." D.M. was standing between the front door of the passenger's side and the concrete barrier. He was holding the door handle to the door when Cortney spotted a rapidly-approaching vehicle driving on the shoulder towards them. Cortney yelled for everyone to move. The last thing she saw before being knocked unconscious was the approaching car run over her foot as it crashed into the back of Evelyn's car.

When Cortney woke up, she found D.M. standing in almost the same position as before the crash. He had laid on the ground when Cortney yelled "move, move, move," and received no injuries as a result of the crash. J.B. was lying on the roadway near where she had been standing before, and Evelyn was

3

lying on top of her. They were all transported to the hospital, but Evelyn died in the ambulance.

*The Lawsuit*

On July 23, 2018, Cortney filed suit against Allstate for breach of contract and breach of duty of good faith and fair dealing, alleging that Allstate denied or delayed payment of the claims under Catherine's auto insurance policy related to the accident. The trial court severed and abated the bad faith and extra contractual claims, leaving only the breach of contract claim.

Allstate filed its first traditional and no evidence motion for summary judgment, arguing that Cortney and D.M. were not "covered persons" because they were not occupying the vehicle at the time of the accident. On May 5, 2020, the trial court held a hearing on the motion as to Cortney's claims only. On May 14, 2020, the trial court granted a final motion for summary judgment as to all parties, dismissing all causes of action with prejudice, without specifying the grounds for the ruling.[1] Cortney filed a motion for new trial, which was overruled by operation of law. Cortney then filed a timely appeal.

## II.    ANALYSIS

In a single issue, Cortney argues that the trial court erred by granting the motion for summary judgment.

---

[1] In the motion for summary judgment on file at the time the trial granted the motion for summary judgment, Allstate argued that Cortney and D.M. were not "covered persons" under the policy because they were not family members and they were not "occupying" the vehicle. On May 14, 2020, after the issuance of the trial court's order granting the motion for summary judgment, Allstate filed a second motion for summary judgment. In this second motion for summary judgment, Allstate argued that D.M. was not a covered person under the policy because he did not sustain any physical injuries.

## A. STANDARD OF REVIEW

When a party moves for summary judgment on both traditional and no-evidence grounds, we address the no-evidence grounds first. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004); *see also Carnegie Homes & Constr. LLC v. Turk*, No. 14-16-00260-CV, 2017 WL 3927290, at *3 (Tex. App.—Houston [14th Dist.] Sept. 7, 2017, no pet.) (mem. op.). On appeal of an order of summary judgment that does not state the grounds on which it is granted, we will uphold the judgment on any valid ground in the motions that is properly supported by the record. *See Golden v. McNeal*, 78 S.W.3d 488, 491 (Tex. App.—Houston [14th Dist.] 2002, pet. denied).

In a no-evidence motion for summary judgment, the movant represents that there is no evidence of one or more essential elements of the claims for which the nonmovant bears the burden of proof at trial. Tex. R. Civ. P. 166a(i). The burden then shifts to the nonmovant to present evidence raising a genuine issue of material fact as to the elements specified in the motion. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). Thus, in reviewing a no-evidence summary judgment, we ascertain whether the nonmovant offered summary-judgment evidence raising a genuine fact issue as to the essential elements challenged in the no-evidence motion. *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 206–08 (Tex. 2002).

In our de novo review of a trial court's summary judgment, we consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Tamez*, 206 S.W.3d at 582. The evidence raises a genuine fact issue if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence.

*Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007) (per curiam).

The movant for traditional summary judgment has the burden of showing that there is no genuine issue of material fact and that she is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *see also Carnegie Homes & Constr.*, 2017 WL 3927290, at *3. When, as in this case, the order granting summary judgment does not specify the grounds upon which the trial court relied, we must affirm the summary judgment if any of the independent summary-judgment grounds is meritorious. *See FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000); *Schultz on Behalf of Schultz v. Lone Star Rd. Constr., Ltd.*, 593 S.W.3d 750, 754–55 (Tex. App.—Houston [14th Dist.] 2019, pet. denied).

**B.    APPLICATION**

The only question before us is whether Cortney and D.M. were "covered persons" under the policy with Allstate. Cortney admits that she and D.M. were not the actual policy holders and they were not considered "family members" under the policy. The parties' dispute centers on whether Cortney and D.M. were "occupying" the covered vehicle within the Allstate policy definition of that term. Thus, in our review, we look to see if there is a genuine fact issue regarding whether Cortney and D.M. were "occupying" the vehicle during the accident.

Both parties cite to and rely heavily on *United States Fid. & Guar. Co. v. Goudeau*, 272 S.W.3d 603, 606 (Tex. 2008). In *Goudeau*, the plaintiff parked on the shoulder of the tollway, exited his vehicle, and began walking around the front towards the retaining wall to assist a stranded motorist. Another vehicle crashed into both of the stationary cars, pinning Goudeau against the retaining wall and crushing his pelvis. *See id.* at 605. The applicable auto insurance policy defined

"occupying" exactly as it is defined in the present case: "in, upon, getting in, on, out or off." *Id.* at 606. Goudeau argued that he was "occupying" his vehicle because he was "upon it" when he was injured. *Id.* The Texas Supreme Court disagreed, concluding that, in construing insurance policies according to their plain language, using "the ordinary, everyday meaning of the words to the general public", Goudeau was not "upon" the vehicle at the time of the accident:

> But a driver who has exited the car, closed the door, walked around the front, and then has the vehicle smashed into him cannot be said to be "occupying" the vehicle at the time of the collision, even if afterwards he ends up partly "upon" it. We cannot ignore the context by focusing solely on "upon" and ignoring "occupying." Construing "upon" to include the situation here would "ascrib[e] to one word a meaning so broad that it is inconsistent with its accompanying words."

*Id.* at 606 (internal citations omitted).

Applying *Goudeau*, Allstate asserts that Cortney's "incidental contact" with the vehicle does not equate to her being "on" or "upon" the vehicle. However, we find *Goudeau* to be distinguishable. Goudeau was not in contact with the vehicle at all until after the crash; accordingly, the Texas Supreme Court concluded that "the plain meaning of 'occupying' as defined in this policy cannot be stretched to include Goudeau." *Id.* at 608. Here, the facts are inapposite; Allstate does not deny that Cortney had her body pressed against—and was in direct, physical contact with—the vehicle at the time of the accident. To determine if this level of contact constitutes being "upon" the vehicle, we consider the everyday meaning of the words in the policy. *See id.*

The Merriam-Webster Dictionary defines "upon" as "on." *See Upon*, MERRIAM–WEBSTER, http//www.merriam-webster.com/dictionary/upon (last visited May 13, 2022). In its first three definitions, "on" is defined as "a function word to indicate position in contact with and supported by the top surface of," "a

function word to indicate position in or in contact with an outer surface," or "as a function word to indicate position in close proximity with." *See On*, MERRIAM–WEBSTER, http//www.merriam-webster.com/dictionary/on (last visited May 13, 2022). Because one of the common and ordinary meanings of the word "upon" is that of "contact with," it is reasonable to conclude the parties contemplated a construction of the word that would include actual physical contact with the vehicle, as occurred here. Further, the policy does not limit or restrict the meaning of the word "upon" in defining occupying. *Hart v. Traders & General Ins.*, 487 S.W. 2d 415, 419 (Tex. App.—Fort Worth, 1972, writ ref'd n.r.e.). Using the ordinary and everyday meaning of the words in the policy, and viewing the evidence in the light most favorable to Cortney, the nonmovant, fair-minded jurors could differ in their conclusions regarding whether Cortney was "occupying" the vehicle at the time of the accident. *See* Tex. R. Civ. P. 166a(c); *Mayes*, 236 S.W.3d at 755; *see also Maldonado v. Travelers Cas. Ins. Co. of Am.*, No. 2:20-CV-00242-JRG, 2021 WL 977895, at \*3 (E.D. Tex. Mar. 16, 2021) (concluding that individuals were "occupying" a vehicle when they were in a continuous course of action of getting on and getting off a covered vehicle to pick up debris off the road even though the individuals took evasive action and were not physically touching the vehicle at the time of the accident).

We conclude that Cortney raised a genuine issue of material fact regarding whether she was occupying the vehicle at the time of the accident. *See Mayes*, 236 S.W.3d at 755. Accordingly, the trial court erred in granting summary judgment on Cortney's claim.

We next address whether D.M. was "occupying" the vehicle. The evidence indicates that he was holding the handle to the car door when he took evasive maneuvers to protect himself by laying on the roadway in close proximity to the car. We note once again that the policy does not limit the phrase "getting in" or the

8

word "upon" in defining occupying. *Hart*, 487 S.W. 2d at 419. It is reasonable to conclude that the parties contemplated a construction of the word "occupying" that would encompass the facts here. In other words, using the ordinary and everyday meaning of the words in the policy, and viewing the evidence in the light most favorable to the non-movant, fair-minded jurors could differ in their conclusions regarding whether D.M. was in a single course of action that falls within the ordinary, everyday meaning of "occupying," i.e., "getting in, on, out or off," the vehicle, even considering that D.M. took evasive actions and was not physically touching the vehicle immediately prior to the accident. *See Mayes*, 236 S.W.3d at 755; *Maldonado*, 2021 WL 977895, at *3. There is a genuine issue of material fact concerning whether D.M. was "occupying" the vehicle. Accordingly, the trial court erred in granting summary judgment in relation to D.M.

Allstate additionally argues that we can affirm the judgment as to D.M. for an alternative reason. At the summary judgment hearing, Hill objected to the trial court's consideration of the ground that D.M. was not injured based on her contention that Allstate failed to provide adequate notice of that ground before the hearing. In response, Allstate agreed to postpone consideration of that ground for at least another twenty-one days. The trial court then said that "we'll have to redo the D.M. non-bodily injury at another time." Allstate's counsel agreed. Given those events, it would be improper for us to affirm summary judgment on an alternative ground, the consideration of which Allstate, as the movant, agreed to postpone. The issue of D.M.'s injury or non-injury was not before the trial court when it ruled.

We sustain Cortney's sole issue.[2]

---

[2] The dissent addresses Allstate's sham affidavit argument that Allstate raised in its reply to Hill's response to Allstate's motion for summary judgment. However, addressing this argument is unnecessary because Allstate does not raise the sham affidavit issue on appeal. *See*

9

### III. CONCLUSION

We reverse the trial court's order granting summary judgment as to both Cortney and D.M., and remand to the trial court for further proceedings.


/s/     Margaret "Meg" Poissant
Justice

Panel consists of Justices Jewell, Bourliot, and Poissant. (Jewell, J., dissenting).

---

*Burton v. Prince*, 577 S.W.3d 280, 291 (Tex. App.—Houston [14th Dist.] 2019, no pet.) (noting that appellate courts will not address issues not raised on appeal by the appellant). Furthermore, Allstate's argument below that Hill's affidavit constitutes a sham affidavit because it contradicts her earlier deposition testimony is "an objection complaining of a defect in form of [her] affidavit." *Hogan v. J. Higgins Trucking, Inc.*, 197 S.W.3d 879, 883 (Tex. App.—Dallas 2006, no pet.). Thus, even if Allstate wanted to raise the issue on appeal, the issue is not preserved because Allstate failed to secure a ruling on its sham affidavit objection. *See id.*